IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**COREY KIDD SR.**                                                                   **PLAINTIFF**
**ADC #164781**

v.                                         No: 4:16-cv-00855 PSH

**CHARLES HOLLADAY**                                                              **DEFENDANT**

### MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Corey Kidd Sr., a former inmate at the Pulaski County Regional Detention Facility ("PCRDF"), filed this *pro se* civil rights complaint against Sheriff Charles "Doc" Holladay in both his individual and official capacities. *See* Doc. No. 2. Kidd seeks $10 million in damages for the alleged violation of his constitutional rights. *Id.* at 6. Specifically, Kidd alleges that he was not tested upon intake to the PCRDF and subsequently contracted tuberculosis (sometimes referred to as "TB"). *Id.* at 4. Kidd also alleges that he was subjected to excessive force when a sergeant at the PCRDF hit him with a mat as he was being removed from the H-Unit. *Id.* Finally, Kidd alleges that he had unopened food items and playing cards taken away from him when he was moved to the H-Unit. *Id.*

Before the Court are Defendant Holladay's motion for summary judgment, supporting brief, and statement of undisputed facts (Doc. Nos. 18-20) as well as Kidd's responses (Doc. Nos. 22 & 23). Holladay's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and Holladay is entitled to summary judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

*Undisputed Facts Submitted by Holladay*

Tuberculosis is a disease caused by mycobacterium tuberculosis. *See* Doc. No. 19-2 at 1 & 5. Tuberculosis bacteria can live in the body without making a person sick. This is called latent mycobacterium tuberculosis infection ("LTBI"), which is suppressed by the immune system and is not contagious. *See id.* at 1-2 & 7. Some people with LTBI go on to develop active tuberculosis disease. *See id.* at 2 & 8. People with tuberculosis disease can spread the disease to others and can develop symptoms including fever, night sweats, cough and weight loss. *See id.* Tuberculosis disease is spread when a person with active tuberculosis disease coughs, sneezes, or exhales. *See id.* A tuberculin skin test reveals whether a person has been infected with tuberculosis bacteria. *See* Doc. No. 19-2 at 2 & 15. Other tests, such as a chest x-ray or sputum sample are needed to see whether the person has active tuberculosis disease. *See id.*

Preventing tuberculosis disease by treating LTBI is a cornerstone of the U.S. strategy for tuberculosis disease elimination. *See* Doc. No. 19-2 at 2 & 17. A regimen of isoniazid and rifapentine administered weekly for 12 weeks as directly observed therapy is as effective for preventing tuberculosis disease as other regimens and is more likely to be completed than the U.S. standard regimen of 9 months daily without directly observed therapy. *See id.* Treatment during latency periods prevents tuberculosis disease during treatment and afterward. *See id.* at 3 & 17. After a person is infected, the tuberculosis incubation period preceding a positive tuberculin skin test is approximately 2 to 8 weeks. *See id.* & 25.

Pursuant to policy of the Pulaski County Sheriff's Office ("PCSO"), medical staff at the PCRDF developed and maintains an infection control program which: monitors the incidence of infectious and communicable disease among inmates; promotes a safe and healthy environment;

prevents the incidence and spread of these diseases; assures that inmates infected with these diseases receive prompt care and treatment; and provides for the filing of all reports consistent with local, state, and federal laws and regulation. *See* Doc. No. 19-1 at 1-2; *see also* Doc. No. 19-1 at 6-8 (PCSO Branch Directive D10-0017). The PCSO infection control procedures follow the guidelines and recommendations of the Centers for Disease Control, Occupational Health and Safety Administration and other pertinent information related to infection control. *See id.* at 2 & 6.

PCSO policy states that inmates booked into the PCRDF will receive a screening, which includes an inquiry into current and past illness, health problems, and venereal disease, and a tuberculin skin test. *See id.* at 2; *see also* Doc. No. at 9-11 (PCSO Medical Policy and Procedures MP02-0012). PCRDF inmates receive a tuberculin skin test within fourteen days of being booked into the PCRDF. *See* Doc. No. 19-2 at 3. PCRDF inmates that receive a positive tuberculin skin test over or equal to 10 millimeters receive further testing to determine whether they have LTBI or active tuberculosis disease. *See* Doc. No. 19-2 at 3 & 31. If it is determined that an inmate at the PCRDF has active tuberculosis disease, he or she will be segregated from the general population and treated until he or she is no longer contagious. *See* Doc. No. 19-2 at 3. All PCRDF inmates who receive a positive tuberculin skin test result are offered a prophylactic 12 week Isoniazid, Rifapentine, and Vitamin B6 regimen. *See id.*

Kidd was booked into the PCRDF on August 15, 2016, to be held for penitentiary. *See* Doc. No. 19-1 at 1 & 5. Kidd received a tuberculin skin test on August 30, 2016. *See* Doc. No. 19-1 at 2 & 12. PCRDF Nurse Donna Washburn interpreted the tuberculin skin test on September 1, 2016, and Kidd had a positive result of 14 millimeters. *See id.* As a result of Kidd's positive tuberculin skin test, he received a chest radiograph. *See* Doc. No. 19-1 at 2 & 13. Kidd's chest

radiograph was normal, meaning he did not have active tuberculosis disease. *See id.* Kidd was prescribed a "directly observed preventative treatment" for LTBI of 50mg of Vitamin B6, 900mg of rifapentine, and 900mg of isoniazid weekly for 12 weeks. *See* Doc. No. 19-1 at 2 & 13-15.

*Kidd's Response*

Kidd points out that Holladay's Answer (Doc. No. 10) states that Kidd received a TB test on August 15, 2016, instead of August 30, 2016. *See* Doc. Nos. 22 & 23. This is true, but immaterial because Holladay corrected that date in his motion for summary judgment. Kidd also asserts that he read in the PCRDF's inmate handbook that he should have received a medical exam within 24 hours of his incarceration there. *See id.* Kidd does not attach a copy of the handbook. Kidd also states that he tested negative for TB in 2015. *See* Doc. No. 23 at 1-2.

## IV. Analysis

### A. Individual Capacity Liability

Holladay may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violations alleged by Kidd. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.") (internal quotations and citations omitted). Kidd does not allege that Holladay was personally involved in any of the constitutional violations alleged in his complaint. Accordingly, Kidd does not state a constitutional claim against Holladay in his individual capacity, and Holladay is awarded summary judgment on Kidd's individual capacity claims.

### B. Official Capacity Liability

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against the defendants in their official capacities is in essence a suit against the County itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, Holladay can only be held liable in his official capacity if Kidd can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Unconstitutional acts by official policy makers may constitute official city policy. *See Tilson v. Forrest City Police Dept.*, 28 F.3d 809, 814 (8th Cir. 1994). "[m]unicipal officials who have final policymaking authority may subject not only themselves, but also the government, to liability under § 1983.").[1]

Kidd does not challenge the PCRDF's policies regarding excessive force or retention of personal property – rather, he claims a sergeant hit him with a mat and took his unopened food and playing cards. Specifically, he stated:

> I got kick out of H unit for not [sic] reason. I didn't get written up at all. A Sgt. Hit me with my mat plus made me leave my food which was not open and took my playing cards. Her reason was because I was moving to [sic] slow.

Doc. No. 2-1 at 2-3. Kidd does not address these claims in his responses to Holladay's motion for summary judgment. Because Kidd does not claim that a custom or policy of Pulaski County was

---

[1] A sheriff is likely an official policy-maker. *See Henry v. Roberson*, No. 4:11CV00449 JLH, 2012 WL 682738, at *7 (E.D. Ark. Mar. 2, 2012) ("There is good reason to think that the sheriff is a final policymaking authority with respect to an Arkansas county's sheriff's department."). However, because Kidd does not assert that Sheriff Holladay took any action, it does not appear that he is asserting that the County should be held liable for Holladay's actions because he is a policy-maker.

6

the moving force behind the claimed violations of his constitutional rights,[2] Kidd does not state a claim for relief against Sheriff Holladay in his official capacity with respect to these claims.

Kidd appears to challenge the constitutionality of the PCRDF's policies regarding treatment of tuberculosis. Kidd alleges that he did not receive a TB skin test when he entered the PCRDF, and that there are no TB lights. To succeed with his claim, Kidd must show that Pulaski County's policies for diagnosing and treating TB in the PCRDF violated his constitutional right to adequate medical care under the Eighth Amendment. *See generally Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (holding that deliberate indifference to a prisoner's serious medical needs "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."). To establish an inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

To meet the objective component, Kidd must be able to prove that because of Pulaski County policies, he was exposed to inmates with active TB cases in a manner that created an unreasonable risk of serious harm to his health. *See id. (*citing *Helling v. McKinney,* 509 U.S. 25, 35 (1993)). Kidd believes he contracted TB in the two weeks between his arrival to PCRDF and the time he was tested. Kidd maintains he last received a negative TB test in 2015, and that his family members were tested after his incarceration and do not have TB. Kidd offers no other proof that he contracted TB at the PCRDF. He could have contracted TB any time between his negative

---

[2] The Court notes that Kidd's allegations regarding the retention of his personal property does not state a constitutional claim in any case because Arkansas provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 530–537 (1984).

test in 2015 and his incarceration at the PCRDF in 2016, and the fact that this family members do not have TB does not necessarily mean he did not have the noncontagious latent form of TB when he was incarcerated. For these reasons, Kidd fails to meet the objective component of the deliberate indifference standard.

Kidd also fails to meet the subjective component of the deliberate indifference standard which requires proof that Holladay, as the official policy maker of Pulaski County, "actually knew of and recklessly disregarded" a substantial risk of harm. *Butler*, 465 F.3d at 345. Kidd produced no evidence that Holladay was aware of any risk of harm. Holladay submitted copies of the Sheriff's branch directive regarding the establishment of an infection control program (Branch Directive D10-0017) as well as the PCRDF's policy that implements the infection control program (Medical Policy and Procedures MP02-0012). Holladay also submitted an affidavit by PCRDF Nurse Donna Washburn describing how PCRDF screens for, diagnoses and treats TB. These policies together with Nurse Washburn's affidavit show that Pulaski County policies do not recklessly disregard the risk of TB infection at the PCRDF.

PCRDF policy provides that inmates are screened for "signs and symptoms of infectious or communicable diseases" upon intake, and that all new inmates will receive a TB skin test. *See* Doc. No. 19-1 at 6-7 & 9. The policy does not specify when that test will occur, but PCRDF Nurse Washburn averred that PCRDF inmates receive a TB skin test within 14 days of their incarceration. *See* Doc. No. 19-2 at 3. She also explained that once a person is infected with TB, it can take 2-8 weeks to show up on a skin test due to an incubation period. *Id.* This explains why the facility waits two weeks to do a skin test -- if a person were exposed to TB shortly before entering the jail, it may not show up on a skin test right away. Additionally, according to Nurse Washburn, PCRDF

inmates with active TB infections are segregated from other inmates while their infections are treated. Doc. No. 19-2 at 3.

In sum, the undisputed evidence demonstrates that the Pulaski County Sheriff's Office implemented policies that addressed the serious health risk that TB poses to inmates at the PCRDF. Accordingly, Holladay is entitled to summary judgment on Kidd's official capacity claims.

### IV. Conclusion

Holladay's motion for summary judgment (Doc. No. 18) is granted, and Kidd's claims against Holladay are dismissed with prejudice.

IT IS SO ORDERED this 1st day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE